# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WAYNE JEROME ROBERTSON,

Plaintiff,

v.

LT. R. D. VANDT, et al.,

Defendants.

CASE NO. 1:03-cv-06070-LJO-GSA PC

ORDER GRANTING DEFENDANT DECKER'S MOTION FOR SUMMARY JUDGMENT (Doc. 126)

ORDER GRANTING DEFENDANTS VANZANDT, ARVIZU, WALTERS, VAUGHN, FARRIS, MCDANIEL, LOMONACO, AND GABALDON'S MOTION TO DISMISS (Doc. 131)

ORDER DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT FOR DEFENDANTS AND AGAINST PLAINTIFF

/

Order on Defendants' Motions to Dismiss and for Summary Judgment

## I. Procedural History

Plaintiff Wayne Jerome Robertson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed August 8, 2003, against Defendants VanZandt,[1] Arvizu,[2] Walters, Vaughn, Farris, McDaniel, Lomonaco, Gabaldon, and Decker for violating the Eighth Amendment by acting with deliberate indifference to Plaintiff's safety.[3] On March 7, 2007, Defendant Decker

---

[1] Identified as Vandt in the complaint.

[2] Identified as Aruizu in the complaint.

[3] Defendants Gonzales and Smith were dismissed from the action for failure to effect service. (Doc. 59.)

filed a motion for summary judgment, and on April 6, 2007, Defendants VanZandt, Arvizu, Walters, Vaughn, Farris, McDaniel, Lomonaco, and Gabaldon filed a motion to dismiss for failure to exhaust or in the alternative for summary judgment. Plaintiff filed his opposition to Defendants VanZandt, Arvizu, Walters, Vaughn, Farris, McDaniel, Lomonaco, and Gabaldon's motion on May 9, 2007, and Defendants filed their reply on May 10, 2007.[4] Plaintiff filed his opposition to Defendant Decker's motion on June 15, 2007, and Defendant filed his reply on June 29, 2007.

II. Summary Judgment Motion Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

---

[4] Plaintiff was provided with notice of the requirements for opposing motions to dismiss for failure to exhaust and motions for summary judgment by the Court in an order filed on January 15, 2004. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 14.)

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Unenumerated Rule 12(b) Motion Standard

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (2007). The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2383 (2006); McKinney, 311 F.3d at 1199-1201.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. Jones, 127 S.Ct. at 921; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).

In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

IV. Plaintiff's Claim

In his verified complaint, Plaintiff alleges that on April 13, 1993, he filed an inmate appeal requesting that Defendant Decker rehouse him due to fighting between inmates. On April 14, 1993, Defendant Decker and Defendant McDaniel allegedly rehoused Plaintiff in a unit where they knew inmates were fighting and Plaintiff would be attacked. Plaintiff was attacked on April 18, 1993, by inmate Bennett while on the exercise yard.

Plaintiff was rehoused on December 24 or 25, 1993, and January 3, 1994, Plaintiff was attacked on the exercise yard. Plaintiff alleges that Defendants Arvizu and Vaughn knew the attack was going to happen because they were using it for "blood sports." (Doc. 1, pg. 3.)

Plaintiff alleges that on February 14, 1994, he was again attacked and Defendant Walter knew the attack was going to occur. Plaintiff alleges that on March 26, 1994, he was attacked and Defendant Arvizu knew the attack was going to occur. Plaintiff alleges that on April 4, 1994, Defendant VanZandt was involved in another attack that was set up.

Finally, Plaintiff alleges that Defendants Farris, Gabaldon, and Lomonco knew what was happening at the prison but failed to put a stop to it. Plaintiff alleges that he learned in 1998 via television and newspaper articles that fights were being staged by prison staff members.

Plaintiff first raised his claims in a lawsuit filed in 1999. That action, case number 1:99-cv-05737-OWW-HGB P Robertson v. Vanzandt, was dismissed by Court with prejudice on the ground that it was time barred.[5] Plaintiff appealed the dismissal and although the dismissal was upheld by the Ninth Circuit on March 20, 2002, the dismissal was altered to one without prejudice and the ground for upholding the dismissal was Plaintiff's failure to exhaust the available administrative remedies. The Ninth Circuit held that in light of Plaintiff's allegation that he did not learn of the

[5] The Court takes judicial notice of court records in case number 99-5737.

conspiracy until 1998, at that stage in the proceedings the Court erred in dismissing Plaintiff's complaint with prejudice as time barred. Plaintiff allegedly exhausted the administrative remedies on July 22, 2003, and filed this suit on August 8, 2003.

III. Undisputed Facts

A. Defendant Decker's Motion

1. At the time of the events giving rise to the claims against Defendants, Plaintiff was housed at California State Prison-Corcorn ("CSP-Corcoran").

2. On April 13, 1993, Plaintiff submitted a written request to Defendant Decker to be moved into Security Housing Unit 4A4R so that he could avoid inmate fights on the yard.

3. Plaintiff was subsequently rehoused by Defendants Decker and McDaniel to Security Housing Unit 4A2R, where he was attacked by inmate Bennett on April 18, 1993, his first day on the yard.

4. As of April 19, 1993, Plaintiff believed Defendant Decker had knowingly placed Plaintiff's life in harm's way and jeopardized his safety and the safety of the institution by housing him on a yard where he would be assaulted.

5. Plaintiff has no evidence to support his claim that Defendant Decker deliberately housed him on Security Housing Unit 4A2R in April 1993 so that he would be attacked.

B. Defendants VanZandt, Arvizu, Walters, Vaughn, Farris, McDaniel, Lomonaco, and Gabaldon's Motion

6. Plaintiff is serving a sentence of life without the possibility of parole.

7. On April 13, 1993, Plaintiff submitted a written request to Defendant Decker to be moved to Security Housing Unit (SHU) 4A4R so that he could avoid inmate fights on the yard.

8. Defendants Decker and McDaniel rehoused him in SHU 4A2R, where he was attacked by inmate Bennett on April 18, 1993.

9. On December 24 or 25, 1993, Plaintiff was moved to SHU 4A4L.

10. On January 3, 1994, Plaintiff fought with white inmates on the yard.

11. On February 14, 1994, Plaintiff fought with an inmate named Nunez.

12. On March 26, 1994, Plaintiff fought with inmate O'Donnell.

13. On April 4, 1994, Plaintiff fought with inmates Iraggorri and Quijada.

14. Plaintiff came to believe that Defendants conspired to orchestrate the fights described above through news accounts he became aware of by August 21, 1998.

15. On April 14, 1999, Plaintiff filed suit against the Defendants in this matter, alleging that they had conspired to stage the fights described above.

16. Defendants' motion to dismiss was granted on September 11, 2000.

17. Plaintiff appealed the granting of the motion to dismiss.

18. The Court of Appeals affirmed the dismissal, although on different grounds than that relied upon by the District Court in granting the motion to dismiss. The Court of Appeals found that the complaint showed Plaintiff had failed to exhaust his administrative remedies before filing suit, and ordered the case dismissed without prejudice.

19. Judgment was entered on July 9, 2002.

20. Plaintiff filed an administrative appeal (CDCR form 602) regarding Defendants' alleged roles in staging fights between other inmates and him at Corcoran. That appeal, PBSP log no. 02-02330, was filed on September 3, 2002.[6]

V. Discussion

A. Defendant Decker's Motion for Summary Judgment

Defendant Decker argues that he is entitled to judgment as a matter of law because Plaintiff's claim against him is time barred and Plaintiff is not entitled to equitable tolling, and because there is no evidence to support Plaintiff's claim that he acted with deliberate indifference to Plaintiff's safety.

1. Statute of Limitations

Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).

[6] Defendants contend the appeal was rejected as untimely on September 27, 2002. However, the evidence submitted by Defendants does not support that fact. (Doc. 131, Def. Ex. G, Wilber Dec.) Further, Plaintiff has submitted evidence that brings into dispute when the final rejection of Plaintiff's appeal occurred. (Doc. 137, P. Exs. E-G.)

Because section 1983 contains no specific statute of limitation, federal courts should apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (2004); Maldonado, 370 F.3d at 954; Fink, 192 F.3d at 914. Although California's statute of limitations for personal injury actions was extended from one year to two years effective January 1, 2003, the two-year statute of limitations does not apply retroactively to claims that accrued prior to January 1, 2003, and as a result, the one-year statute of limitations applies in this case. Cal. Civ. Proc. Code § 335.1 (West 2007); Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55.

Although Plaintiff alleges in his complaint that he did not learn prison officials were setting up fights between inmates until 1998, Defendant Decker has submitted evidence that on April 19, 1993, Plaintiff filed an inmate appeal complaining that after he requested a cell move on April 13, 1993, Defendant knowingly placed his life in danger, and knowingly placed his life harm's way and jeopardized his safety and the safety of the institution danger when Defendant moved Plaintiff to where he knew inmates were being assaulted due to their race. (Doc. 126, Motion, Court Record pgs. 44-45.)

The basis of Plaintiff's claim is that Defendant Decker moved him to a unit where he knew inmates were fighting and that Plaintiff would be attacked. Plaintiff filed a grievance on this issue on April 19, 1993, which directly contradicts his assertion that his claim did not accrue until 1998. Plaintiff has submitted no evidence bringing into dispute the fact that he filed a grievance concerning Defendant's conduct the day after the attack of April 18, 1993, occurred.

Plaintiff's arguments that Defendant's motion was previously denied and should be denied again, and that he has the right to continue with discovery because no discovery was provided by Defendant are without merit. Defendant's pre-answer motion to dismiss was denied because the allegations in Plaintiff's complaint were sufficient to state a claim and defeat a motion to dismiss on statute of limitations grounds. However, the pending motion is one for summary judgment and conclusory allegations set forth in the complaint are not sufficient to raise a triable issue of fact. Discovery is over and there are no discovery disputes pending resolution. (Doc. 122.) Therefore, Plaintiff may not avoid summary judgment by asserting that he needs further discovery. Fed. R. Civ. P. 56(f).

Accordingly, Plaintiff's claim against Defendant Decker accrued on April 19, 1993, at the latest. Absent the application of equitable tolling, Plaintiff had until April 19, 2000, within which to file suit against Defendant Decker.

Equitable tolling can "be used to stop a limitations period from continuing to run after it has already begun to run." Socop-Gonzalez v. Immigration and Naturalization Serv., 272 F.3d 1176, 1184 (2001) (internal quotations and citation omitted). Equitable tolling "'soften[s] the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'" Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001) (quoting Addison v. State of California, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224, 578 P.2d 941 (1978)). Preventing the assertion of stale claims is the principal goal of statutes of limitation, and "'general policy . . . favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" Daviton, 241 F.3d at 1137 (quoting Addision, 21 Cal.3d at 317). "[T]imely notice and absence of prejudice to defendant and plaintiff's good faith and reasonable conduct" are the requirements that control, id., and "tolling is appropriate where the record shows '(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim,'" id. at 1137-38 (quoting Collier v. City of Pasadena, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681 (1983)). Under California law, the equitable tolling doctrine tolls the statute of limitations while exhaustion occurs, regardless of whether or not exhaustion is prerequisite to filing suit. Donoghue v. County of Orange, 84 F.2d 926, 930-31 (9th Cir. 1988); Addison v. State of California, 21 Cal.3d 313, 318, 146 Cal.Rptr. 224, 578 P.2d 941 (1978).

Defendant argues that Plaintiff failed to diligently pursue his claim against Defendant and that the prejudice against him cannot be overstated given that the incident at issue occurred more than a decade ago. Defendant also argues that Plaintiff was not prevented from pursuing his claim by forces beyond his control.

In this instance, Plaintiff filed an inmate appeal of Defendant's conduct on April 19, 1993, which tolled the statute of limitations. (Doc. 126, CR pg. 45.) The appeal was denied at the first

formal level of review and returned to Plaintiff on June 14, 1993. (Id., pg. 46.) There is no evidence before the Court that Plaintiff pursued to the appeal to a higher level of review, and the statute of limitations therefore began to run on June 14, 1993. Plaintiff filed his first suit in federal court on April 26, 1999, almost six years later. Assuming for the sake of argument that the complaint filed in this action on August 8, 2003, relates back to the complaint in the first federal action, Plaintiff still filed suit almost five years after the one year statute of limitations expired. Plaintiff's claim against Defendant Decker is barred and Defendant is entitled to judgment as a matter of law.

2. Eighth Amendment Claim

In the alternative, Defendant argues that there is no evidence that he violated Plaintiff's rights under the Eighth Amendment. To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference

standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

Plaintiff has presented no evidence in support of his claim that Defendant Decker intentionally moved him to a unit where he would be attacked. Although Plaintiff's complaint is verified, the allegations are general and conclusory.[7] At this stage, Plaintiff is required to come forth with some evidence in support of his claims.[8] Because the record is devoid of any evidence that Defendant Decker acted with deliberate indifference to a substantial risk of harm to Plaintiff's safety, Defendant is entitled to judgment as a matter of law.[9]

B. Defendants VanZandt, Arvizu, Walters, Vaughn, Farris, McDaniel, Lomonaco, and Gabaldon's Motion to Dismiss or for Summary Judgment

1. Exhaustion

Defendants VanZandt, Arvizu, Walters, Vaughn, Farris, McDaniel, Lomonaco, and Gabaldon argue that they are entitled to dismissal of this action because Plaintiff failed to exhaust in

---

[7] A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e).

[8] Plaintiff's opposition is not verified and is not accompanied by a declaration.

[9] Plaintiff submits three newspaper articles. Defendant's evidentiary objections aside, the articles do not support Plaintiff's claim that on April 18, 1993, Defendant Decker violated his rights under the Eighth Amendment.

compliance with section 1997e(a). Defendants submit evidence that Plaintiff filed an inmate appeal, log number PBSP 02-02330, which was rejected as time barred because it was not filed within fifteen working days of the event being appealed. Plaintiff argues that the rejection of the appeal satisfies the exhaustion requirement and that he complied with the law as it stood when he filed suit in August of 2003.

At the time Plaintiff first brought suit in 1999, it was the law of this Circuit that inmates seeking money damages did not have to exhaust. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999), cert. denied, 120 S.Ct. 787 (2000). However, following the issuance of the decision in Booth, inmates are no longer excused from compliance with the exhaustion requirement if they are only seeking money damages. Booth, 532 U.S. at 741. When the Supreme Court of the United States "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97 (1993); see also United States v. Newman, 203 F.3d 700,701-02 (9th Cir. 2000). Therefore, Plaintiff was required to exhaust the available administrative remedies prior to bringing this action.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff submitted an inmate appeal on August 30, 2002. (Doc. 137, Court Record pg. 21.) The appeal was rejected by officials at CSP-Corcoran on October 1, 2002. (Id., pg. 23.) Plaintiff mailed the appeal to the Director's Level of review on October 3, 2002, and it was rejected by letter dated October 16, 2002. (Id., pgs. 24-25.) In a letter dated October 24, 2002, Plaintiff contacted the appeals coordinator at Pelican Bay State Prison ("PBSP") and requested help exhausting the appeal. (Id., pg. 27-28.) Plaintiff was informed on October 25, 2002, that the appeals coordinator could not help him. (Id., pg. 20.) On May 7, 2003, Plaintiff again tried to submit the appeal to the Director's Level of review and it was again rejected, by letter dated May 26, 2003. (Id., pgs. 26, 33.) On July 18, 2003, Plaintiff again contacted the PBSP appeals coordinator and requested that his appeal be processed. (Id., pg. 41-42.) On July 22, 2003, Plaintiff was notified that he was requesting assistance from the wrong person and that the issue had to be resolved by CSP-Corcoran. (Id., pg. 40.) On July 30, 2003, Plaintiff was

notified by his attorney of record that exhaustion was complete by virtue of the rejection of the appeal. (Id., pgs. 43-44.) Plaintiff filed suit on August 8, 2003. (Doc. 1.)

While the Court can appreciate the consternation felt by Plaintiff in trying to determine what was required of him in terms of exhaustion, Plaintiff's argument that the exhaustion requirement was satisfied when his inmate appeal was rejected as untimely is unavailing in light of the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378 (2006). Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford, 126 S.Ct. at 2386, and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," id. at 2382. Plaintiff did not exhaust and Defendants are entitled to dismissal of the claims against them. In light of this finding, the Court does not reach Defendants' argument that they are entitled to judgment as a matter of law because this action is barred by the statute of limitations.

VI. Order

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendant Decker's motion for summary judgment, filed March 7, 2007, is GRANTED and judgment as a matter of law shall be entered for Defendant;
2. Defendants VanZandt, Arvizu, Walters, Vaughn, Farris, McDaniel, Lomonaco, and Gabaldon's motion to dismiss for failure to exhaust, filed April 6, 2007, is GRANTED, and the claims against them are dismissed without prejudice; and
3. The Clerk of the Court shall enter judgment for Defendants and against Plaintiff as set forth above.

IT IS SO ORDERED.

**Dated: March 19, 2008**

**/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE